IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

United States of America,

        Plaintiff,

v.                                       Case No 3:18 CR 187

                                           Judge Thomas M. Rose

Juwan Chino Dillard,

        Defendant,

___

ENTRY AND ORDER DENYING DEFENDANT'S MOTION TO

VACATE/VOID GUILTY PLEA (DOC. 90)

___

        This matter comes before the Court on Defendant's Motion to Vacate/Void Plea (Doc. 90) filed March 18, 2020 and the Government's Response (Doc. 92) filed March 20, 2020. The Court convened a hearing on said motion on June 4, 2020 at which time Defendant testified. Counsel for both Defendant and the Government submitted argument in writing and at said hearing as well as Defendant's Post Hearing Memorandum filed on June 10, 2020.

**Statement of the Case**

        On December 13, 2018, the Grand Jury returned a one count Indictment against the Defendant and a co-Defendant which alleged both had conspired to possess with intent 40 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. 841(a)(1) and (b)(1)(B)(vi), all in violation of 21 U.S.C. 846. (Doc. 15) A person who violates this section of law shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years. On January 2, 2019, the Defendant entered a plea of not guilty to the count contained in the Indictment. (Doc. 18) Subsequently, on May 14, 2019, the Grand Jury returned a First Superseding Indictment against the Defendant alleging he conspired with others to possess with intent 400 grams or more of a mixture or substance containing a detectable amount of fentanyl, a Schedule II controlled substance, in violation of 21 U.S.C. 841(a)(1) and (b)(1)(A)(vi), all in violation of 21 U.S.C. 846 (Doc. 35). A person who violates this section of law shall be sentenced not less than

10 years or more than life. The mandatory minimum for the First Superseding Indictment was 5 years more than the mandatory minimum for the original Indictment. Prior to arraignment on the First Superseding Indictment, on July 19, 2019, the Defendant elected to plead guilty to the charge contained in the original Indictment pursuant to a Fed. R. Crim. P. 11(c)(1)(A) written plea agreement. (Docs. 44 and 46) On October 22, 2019, the Court convened the Defendant's dispositional hearing. Evidence was presented to determining the amount of fentanyl to be attributed to the conspiracy. The dispositional hearing was continued until November 27, 2019. On November 25, 2019 Defendant filed a motion to withdraw/modify the statement of facts that was attached to his plea agreement (Doc. 75) and which he previously accepted and acknowledged at the plea hearing. The Court denied said motion on January 2, 2020. (Doc.79). The continuation of the dispositional hearing was set for March 25, 2020.  This motion to Vacate/Void said Plea (Doc.90) was filed March 18, 2020, approximately 5 months after the first portion of the dispositional hearing had been conducted and seven days prior to the scheduled continuance of the remainder of the final dispositional hearing, on March 25, 2020.

Pursuant to Fed. R. Crim. P. 11(d)(2)(B) a defendant may withdraw a plea of guilty if he "can show a fair and just reason for requesting a withdrawal."  The Defendant carries the burden of proving that a withdrawal of a guilty plea is justified leaving the matter to the discretion of the district court. In *United States v. Bashara*, 27 F.3d 1174, 1186 (6th Cir. 1994),  the Sixth Circuit gave a non-exclusive list of factors which should guide a district court in determining whether to allow a defendant to withdraw his guilty plea: (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence or absence of a valid reason for the failure to move for withdrawal earlier in the proceeding; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has prior criminal experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

In his motion counsel for Defendant asserts that Defendant entered his plea based upon the understanding that he would be "facing a substantially lesser term of confinement" by entering the plea to the original Indictment and that the Government would "not further prosecute the Defendant for conduct prior to the date of this Plea Agreement that was part of the same course of criminal conduct described in the information that was known by the USAO at the time of the execution of this Plea Agreement."  Defendant asserts he was unaware of his potential sentence and that the information which would directly affect sentencing was kept from him and his counsel by the Government, denying him his right to effective assistance of counsel under the Sixth Amendment. Due to these factors Defendant argues that there was no meeting of the minds in reaching the plea agreement, rendering his plea unknowingly, involuntarily and unintentionally made.

## Relevant Facts

On July 19, 2019, Defendant and counsel entered a plea of guilty to the charge of conspiring to knowingly and intentionally possessing with intent to distribute 40 grams or more of a mixture or substance containing a detectible amount of fentanyl, a Schedule II controlled substance in violation of 21 U.S.C. 841(a)(1), 841(b)(1)(vi); all in violation of 21 U.S.C. 846. During the plea hearing the Court conducted a thorough discussion with the Defendant concerning all material terms of the agreement and his competency to enter into the agreement. The Defendant entered a plea of guilty to the offense.

Regarding the matters now raised by the Defendant through counsel in this motion, the Court inquired as follows:

> THE COURT: You've been able to understand everything that Mr. O'Brien has talked with you about?
>
> DEFENDANT: Yes, sir.
>
> THE COURT: Now, if you had some questions about the charge or the facts or the process that you've been going through, has Mr. O'Brien been able to answer and address your concerns?
>
> DEFENDANT: Kind of. Yeah, he been—it have been. I'm just trying to see how my co-defendant is different situations of us getting charged, me seeing his charge and my charge. I am just trying to make sure my guidelines of what I am pleading out today is the right guidelines that I'm pleading out to.
>
> THE COURT: Well, we are going to go through – we're going to go through what the estimates are with regard to the guidelines. Obviously, there is no guarantees at this point in time. You understand that?
>
> DEFENDANT: Yes. That's what he told me.
>
> [Doc #93, Page 4, Line 22- Page 5, Line 14]
>
> THE COURT: All right. So, I guess I am going to ask that question again. Do you feel comfortable that all your questions have been asked and answered?
>
> DEFENDANT: Yes. Yes, sir.
>
> [Doc#93 Page 5, Line 22-25]

Following the initial questioning the Court discussed the facts to which the Defendant was pleading as contained in Attachment A, Statement of Facts to the plea agreement, as follows:

>THE COURT: All right. In addition to that, he reviewed with you a statement of the facts that will be attached to the plea, and that's in a document entitled "Attachment A, Statement of Facts." It's a one – basically a one-paragraph statement of facts. Have you, with his assistance, carefully reviewed that?
>
>DEFENDANT: Yes. Yeah.
>
>COUNSEL: Can we have a moment, your honor?
>
>DEFENDANT: I've read it.
>
>CO URT: So, you've read over that, and do you believe that you fully understand it?
>
>DEFENDANT: Yes.
>
>COURT: Okay. Now, if you had questions or concerns about it, were those questions and concerns answered and addressed?
>
>DEFENDANT: Yes.
>
>COURT: All right. Are those the facts, then, Mr. Dillard, that you wish to enter a plea of guilty to?
>
>DEFENDANT: Yes sir.
>
>[Doc.#93  Page 6, Line 14 – Page 7, Line 8]

After further discussion the Court again asked Defendant if those are the facts to which he wished to plead.

>COURT: Now, let me go back. Mr. Dillard, the, do you have any questions other than that about the factual statement ?
>
>DEFENDANT: No, sir.
>
>COURT: Are those, then, the facts to which you wish to enter a plea of guilty to?
>
>DEFENDANT: Yes, sir.
>
>COURT: Is that because those are true?
>
>DEFENDANT: Yes, sir.
>
>[Doc.#93 Page 12, Line 18-Page 13, Line 11]

The Court confirmed with the Defendant that he understood what the mandatory minimum and maximum penalties that the Court could impose.

>COURT: So, I am going to review with you, one, the maximum penalties that could be imposed upon an individual for a violation of this section of law. It does not mean I am imposing maximums. It just means that you need to understand what those parameters are

4

> or what those outer boundaries are within which the Court can – which the Court would be considering for disposition. You understand?
>
> DEFENDANT: Yes , sir.
>
> COURT: So, let's talk about that first. You understand that in this case, for a violation of this section of law, the Court would have to, would be mandatory, to impose a term of at least 5 years – 60 months, you understand? The maximum is 40 years. So, the range would be from the mandatory minimum of 5 years up to 40 years. Between those periods of time, of course, the Court has a great deal of discretion, but those are the – that's the mandatory minimum and the maximum. You understand?
>
> DEFENDANT: Yes, sir.
>
> [Doc. 93, Page 13, Line 19 – Page 14, Line 11]

Subsequently the Court had a lengthy discussion with defense counsel and the Defendant with regard to the factors of sentencing, specifically the advisory guidelines and their calculation, which appears to be the Defendant's primary basis for his present motion. Pursuant to the Court's practice, after it's general description of the guidelines and how they work, the Court requested defense counsel to share with the record a summary of his discussion with the Defendant of the guidelines, how they work and how they may affect disposition, including any estimates he had made. The discussion went as follows:

> COUNSEL: Your honor, I have respectfully. And we are looking at a worst possible scenario on the guidelines of 188 to 235 months, respectfully. He ends up – he starts out with a 36 and takes 3 off for acceptance of responsibility and a timely notification. He's in a category IV, criminal history category IV, your honor, respectfully.
>
> COURT: Okay. So –
>
> COUNSEL: And we have a bottom number of 33, and we are dealing with range of 188 to 235. Again, that is the worst possible scenario, and I wanted to give you the worst possible scenario. There are a lot of other scenarios that are less than that, but that's – that's where we are right now.
>
> COURT: Mr. Keller, that's consistent with the government's view?
>
> GOV: Mr. O'Brien and I have had discussions, that that's certainly the defense perspective. There certainly could be additional add-ons, but that's his calculation.
>
> COURT: Mr. Dillard, did you understand Mr. O'Brien's explanation of the guidelines?.
>
> DEFENDANT: I understand them, but – yeah, I understand them.
>
> COURT: Well, what basically Mr. O'Brien is estimating is that – okay. With a guideline calculation, there is a score for every offense. And what he is estimating is that when you look at this offense, there is a score for this offense, and there might be some additions or some deletions to it. Acceptance of responsibility is a deletion. It can lower the score.

There are other things; for example, the quantity of drugs that could raise the score. But what he is estimating is that in the end there would be a net offense level, or an offense, a final offense level of a 33.

And that 33, along with a criminal history category – and my understanding, he is estimating the criminal history category is IV – that with those two figures, if I go to the chart, the chart would, at the advisory range – the advisory range is 188 to 235 months.

Now, that, again, is considered by the Court – if that indeed is what the Court finds, that is considered along with the other factors of sentencing in coming up with a disposition. Do you understand?

DEFENDANT: Can I speak?

COURT: Yes.

DEFENDANT: When I looked at my guidelines I was at a 5 to 40, in the drugs that were found. For 40 or more, it had me at a level 24. I don't see how I am getting down to a level 36. Even though my priors, I still stand in a category IV with my points. And I took my time over that book and my guidelines and what I am being charged with, my priors and all that, and I can't – I don't want to sit up here and see me at 36 and I supposed to be at 24.

COURT: Well, Mr. Obrien has estimated, based upon his analysis, that his estimate would be that you would be at a 33. That's what his estimate is.

DEFENDANT: Okay.

COURT: Now, the Court – Mr. O'Brien does this, I mean he calculates this and he makes these estimates. Those aren't guarantees. The Court may find a different offense level. It may find a different criminal history category. It may find different guidelines. I am going to do my own calculation. But what he has done is he has estimated a, I guess – I am using his words – worst case scenario at a 33 and a IV, which arrives at a guideline range of the 188 to 235. Now, that's his estimate of the worst possible, I guess scenario --

DEFENDANT: Okay.

COURT: --on your behalf. And that's what he's indicating here for the record. The Court understands what his estimates are. The Court will be considering the evidence that is presented. The Court will make its own calculation. It sounds like to me you have done some calculations, too. It sounds like to me that you believe that that might be lower. I don't know that. I need to make my own calculations. The government may have their position with regard to  what the calculation should be.

DEFENDANT: Okay.

COURT: So, I guess my response to you is that I'm not quite sure how you did your calculations. Mr. O'Brien has shared with the record a sketch of how he did his calculations. That is his estimate of the advisory range. I don't know what the

government's estimate is of the advisory range, but the Court will be, after I receive all the information, will make a determination as to what the advisory range will be.

DEFENDANT: Got you.

COURT: The only thing I need to emphasize is Mr. O'Brien here has made an estimate of 33 and IV for 188 to 235. Whether that is how the Court finds I can't tell you at this point in time because I don't know what I will be looking at. You understand?

DEFENDANT: Yes, sir.

COURT: Do you have any questions about that?

DEFENDANT: No, sir.

COURT: Let me ask you this: I understand that you believe there is a possibility that the guideline, the offense levels, maybe the criminal history category, and the advisory range is lower than what Mr. O'Brien has estimated. You understand, though, generally how the guidelines work? You have indicated you have studied that; is that right?

DEFENDANT: Yes, sir.

COURT: So, do you have any questions about how the guidelines work?

DEFENDANT: No. I'm good.

COURT: All right. So are you comfortable with the Court's explanation of how the guidelines are working and the fact that Mr. O'Brien has certain estimates. He's given you those estimates. You have looked at it. You have certain estimates in your mind that possibly could be the scenario. The government – I don't know what the government's estimates are or what they believe the scenario is. I am going to listen to all of this stuff as it comes to me in the dispositional process and I am going to make a determination of what the base offense level is, the ending offense level, the criminal history category and then I will determine what, I believe –

DEFENDANT: Got you.

COURT: -- the advisory guideline is, and then I will take that advisory guideline and along with all these other factors I just talked with you about I'll determine what I believe is an appropriate disposition. Do you understand?

DEFENDANT: Yes, sir.

COURT: So, do you have any questions about any of the factors of sentencing?

DEFENDANT: No, sir.

COURT: Do you have any questions about the guideline calculation? I understand that you believe that possibly Mr. O'Brien is high on his estimate, but that's his estimate at this point in time. Understanding his estimates –

7

DEFENDANT: Yes, sir.

COURT: -- do you wish to go forward with your plea?

DEFENDANT: Yes, sir.

[Doc.# 93 Page 19, Line 13-Page 24, Line 22]

Significantly, at the conclusion of the Court's discussion with the Defendant concerning the factors of sentencing and specifically the advisory guideline calculation, the following exchange took place initiated by Defendant's counsel:

COURT: Anything further we need to deal with regard to disposition, Mr. Keller?

GOV: I don't believe so, your honor.

COURT: Mr. O'Brien ?

COUNSEL: I don't think so either, your honor. I just wanted to add, however, that my client has his own little chart here and has failed to take into account relevant conduct, and that's what is going to be a big factor in this case. And there many permutations to the factual matters that will lead to a recommendation by the probation department.

I kept approaching this from the standpoint of the worst possible scenario so my client would not be surprised. There would never be anything worse than this. That was my approach from my estimate, and those are the numbers that I have, but they depend on the factual findings, on the relevant conduct, and that may be what was slightly confusing to my client.

COURT: Well—

COUNSEL: I spent time with him. I hope he understands it now. But we will have a chance at the end to put in our version of these events before the judge makes a decision. Do you got it?

DEFENDANT: Yes, sir.

COURT: I think – I believe, Mr. O'Brien, I think Mr. Dillard understands the fact that there needs to be a calculation by the Court. He understands your estimates. He has done some calculation on his own. He has some idea as to what those numbers should read. The government will be presenting theirs.

And so, the Court, after considering everything, will make a determination. The Court just needs to confirm, and I think I have for the record, that Mr. Dillard understands what your estimates are. He understands generally how the guidelines work. He understands all the other factors of sentencing. And in light of that, understanding he has some different opinions that he'll present through you to the Court at disposition, that he still wishes to go forward with his plea. Is that correct?

8

>DEFENDANT: Yes.
>
>[Doc. 93, Page 24, Line 24 – Page 26, Line 14]

Finally, after extensive questioning, the following dialog concluded the hearing with Defendant entering his plea of guilty:

>COURT: Mr. Dillard, has anyone promised you anything other than what is in this plea agreement in return for your plea?
>
>DEFENDANT: No, sir.
>
>COURT: Has anyone said or done anything that has caused you to believe something is going to happen or not happen –-
>
>DEFENDANT: No, sir.
>
>COURT: -- in return for your plea that is not in the plea agreement.
>
>DEFENDANT: No, sir.
>
>COURT: Anyone forcing you to do this?
>
>DEFENDANT: No, sir.
>
>COURT: This is something that you have thought about, you have weighed all your options, you have talked with Mr. O'Brien, and this is how you wish to proceed.
>
>DEFENDANT: Yes, sir.
>
>COURT: Have you had any kind of drugs, alcohol or medication within the last 24 hours?
>
>DEFENDANT: No, sir.
>
>COURT: Clear headed this morning?
>
>DEFENDANT: Yes, sir.
>
>COURT: Understand everything that has been said and done?
>
>DEFENDANT: Yes, sir.
>
>COURT: Are you entering this plea to this charge, Mr. Dillard, because you are, in fact, guilty as charged?
>
>DEFENDANT: Yes, sir.
>
>[Doc. 93, Page 30, Line 22 – Page 31, Line 25]

**Discussion**

Under Rule 11 (d) of the Federal Rules of Criminal Procedure, a defendant may withdraw a plea of guilty prior to sentencing only if he can establish a "fair and just reason" for doing so. *United States v. Dixon, 479 F.3d 431 ,436 (6th Cir. 2007)(citing* Fed. R. Crim. P. 11(d)(2)(B)). A defendant has the burden of proving that withdrawal of the former plea is justified. *United States v. Hunt, 205 F.3d 931,936(6th Cir. 2000)(citing United States v. Baez,* 87 F. 3d 805, 808 (6th Cir. 1996). According to the Sixth Circuit, "the purpose of Rule 11(d) is to allow a "hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes that he made a bad choice in pleading guilty" *Dixon, 479 F. 3d at 436(citing United States v Alexander, 948 F. 2d 1002, 1004 (6th Cir. 1991)).* Here, Dillard asserts that he should be allowed to withdraw his plea because he did not enter into it knowingly, intelligently and voluntarily due to the fact that he was unaware that the Government would present "relevant conduct" evidence that could, if adopted by the Court, significantly increase his offense level and, as a result, term of confinement.

The Sixth Circuit has addressed the factors to be considered in the determination of whether a defendant should be allowed to withdraw a plea of guilty prior to sentencing in the *United States v. Spencer,* 836 F. 2d 236 (6th Circuit 1987) (citing *United States v. Triplett,* 828 F.2d 1195, 1197 (6thCir. 1987)).

One factor is the length of time between the entry of the guilty plea and the filing of the motion to withdraw it. Defendant's plea of guilty and his motion to withdraw is a strong factor supporting the denial of the motion. Here, over 6 months passed between the time when the Defendant entered a guilty plea and the time that he requested withdrawal of his plea. In fact, the Defendant did not move until, March 18, 2020, to withdraw his plea, significantly after his sentencing hearing commenced on October 22nd and one week before the continuation of that hearing scheduled to be held on March 25, 2020. The Sixth Circuit has affirmed the denial of motions to withdraw based upon much shorter periods of time *See Spencer,* 836 F. 2d 236; *Valdez,* 362F. 3d 903.

Another factor is that the Defendant has failed to present a valid reason for a delay of this magnitude. Although Defendant asserts that he entered the plea unknowingly, involuntarily and unintentionally, as previously noted, it was not until after the pre-sentence report, the recommended guideline calculations became available and the Court had conducted the first portion of his sentencing hearing on October 22, 2019 and then not for 34 days, 7 days before it was to reconvene the dispositional hearing, on March 22, 2020 that he moved. It was only after Defendant was aware of the recommended guideline calculations and the Government's presentation of alleged relevant conduct which could justify a higher offense level, guideline range and ultimate sentence that he filed the motion to withdraw. Defendant was aware of the estimated

guideline calculation and should have been reasonably certain of the Government's intention to present additional relevant conduct evidence as early as his plea, when even defense counsel characterized the issue of relevant conduct as a "big factor in the case". On August 15, 2019, over seven months prior to his motion to withdraw, the Government confirmed the intention to present additional relevant conduct by filing its motion for an evidentiary hearing as part disposition. It appears clear that Defendant's reason to withdraw his plea was that it became increasingly clear, that although fully aware of the possible dispositions within his perimeters of sentencing of 5 to 40 years, the relevant conduct presented by the Government, if adopted by the Court, would result in a significantly higher advisory range and possible sentence.

A third factor is this defendant's failure to maintain his innocence of the charge in the indictment. This also supports the denial of the motion to withdraw. In the July 19, 2019 plea hearing, the Defendant acknowledged his guilt to the charge in the indictment and confirmed the factual basis for the charge to which he plead guilty. He has, at no time, asserted innocence as a basis for this withdraw, contesting only the amount of relevant conduct.

As clearly shown in the discussion of the relevant facts in this decision, Defendant, at his plea hearing, without hesitation, fully understood all aspects of his plea and plea agreement. All his questions were answered and concerns addressed, including all possible sentences and the factors the Court would consider in arriving at a disposition that met the goals of sentencing but not more than necessary. Specifically, he understood there were no guarantees and that although he, defense counsel and the Government all had estimates of guideline calculations, it was the Court that would make the final decision.

In considering the Defendant's nature and background, as well as his familiarity with the legal system, the Court finds him not to be a novice. Defendant's recommended criminal history category is a IV with a criminal history score of 9. That history includes drug trafficking offenses that resulted in an excess of 10 years of imprisonment. In addition, Defendant had numerous other charges and court appearances. In this current case Defendant has filed numerous motions in addition to the subject motion to withdraw plea, including a motion to suppress, motion to withdraw prior approval of factual statement and motion for release of brady material. This history as well as the Defendant's acuity at the plea hearing demonstrates a competent understanding of the judicial process, including his plea.

## Summary

In summary, none of the factors considered by the Court weigh in favor of granting Defendant's Motion. Defendant pleaded guilty, on July 19, 2019 (Doc. 46). On

March 18, 2020 he sought to withdraw that plea.  This, as pointed out, was a substantial amount of time.  He points to no valid reason for the failure to move for withdrawal earlier in the proceedings; he has not asserted his innocence; there are no abnormalities in the circumstances underlying the entry of the guilty plea; the Court is not aware of anything in Defendant's nature and background that warrants withdrawal of the plea; the Defendant has had multiple prior experiences with the criminal justice system, including guilty pleas.  As regards potential prejudice to the Government if the Motion to Withdraw is granted, this appears no greater than again preparing for trial.  In light of these findings, Defendant's Motion to Withdraw Plea (Doc. 90) is DENIED.

.

DONE and ORDERED in Dayton, Ohio this  9th day of July, 2020.

\*s/Thomas M. Rose
_____
Thomas M. Rose, Judge
United States District Court